D/F

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 0 9 2009 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

DONALD WILLIAMS,

**MEMORANDUM & ORDER**

**06-CV-6601 (NGG)**

Plaintiff,

-against-

THE CITY OF NEW YORK; THE NEW YORK
CITY POLICE DEPARTMENT; RICHARD
BROWN, DISTRICT ATTORNEY OF THE
COUNTY OF QUEENS; JASMINE CHANG,
ASSISTANT DISTRICT ATTORNEY FOR THE
COUNTY OF QUEENS; P.O. JOHN OCCHIPINTI
and L.T. GARY MASSINA, individually & in their
official capacity as New York City police officers of
the City of New York,

Defendants.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff Donald Williams ("Plaintiff" or "Williams") brings this action against the City of New York ("the City"), the New York City Police Department ("the NYPD"), District Attorney Richard Brown ("DA Brown"), Assistant District Attorney Jasmine Chang ("ADA Chang"), Officer John Occhipinti ("Officer Occhipinti"), and Lieutenant Gary Messina ("Lieutenant Messina"). Pursuant to 42 U.S.C. § 1983, Plaintiff claims violations of his rights under the United States Constitution. Currently before the court is Defendants' Motion for Summary Judgment (Docket Entry #49). For the reasons that follow, Defendants' Motion is GRANTED in part and DENIED in part.

1

## I.  BACKGROUND

Except as otherwise indicated, the court considers the following facts undisputed.[1] On the afternoon of December 4, 2003, Williams drove to 13-10 Redfern Avenue, an apartment building in the Borough of Queens classified as a New York City Public Housing Development. (Def. 56.1 Statement ¶¶ 2-3 (Docket Entry #52) ("Def. 56.1").) He went there to visit his girlfriend, Theresa Swinton, in Apartment 2-B as he had done many times before. (Decl. of Amy N. Okereke (Docket Entry #51) ("Okereke Decl.") Ex. C, Dep. of Donald Williams 52-54 ("Williams Dep.").) After entering the unlocked front door of the apartment building, Williams waited for the elevator in the lobby for three or four minutes. (Id. at 54.) During that time, he saw two individuals whom he did not know enter the building and run up the stairs. (Id. at 55.)

Meanwhile, Officer Occhipinti and Lieutenant Messina, who were conducting a vertical patrol of the Redfern Avenue Housing Development, had just seen at least two individuals enter the front door of the same apartment building. (Def. 56.1 ¶¶ 17, 19.) Lieutenant Messina recognized one of these individuals as a local drug dealer named Shawn Colley, who was part of the "north-side" Redfern drug faction.[2] (Id. ¶¶ 20, 24.) Based on prior dealings with Mr. Colley, Lieutenant Messina believed that Mr. Colley did not live in the building. (Id. ¶ 21.)

---

[1] Plaintiff's submissions in opposition to Defendants' Motion do not comply with Local Civil Rule 56.1. Pursuant to Local Civil Rule 56.2, Defendants provided Plaintiff with notice of the consequences of failing to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, which included copies of those rules. (See Docket Entry #50.) Plaintiff did not submit a response to Defendants' 56.1 Statement as required by Local Civil Rule 56(b). Plaintiff's opposition to Defendants' Motion is in the form of a sworn statement which, in addition to setting forth legal arguments, attempts to dispute some of Defendants' factual assertions and occasionally cites to Plaintiff's exhibits.

While this court is entitled under Local Rule 56.1(c) to deem admitted all facts set forth in Defendants' 56.1 Statement that find support in the evidence, because Plaintiff is pro se, the court declines to do so here. See Melendez v. DeVry Corp., No. 03-CV-1029 (NGG) (LB), 2005 WL 3184277, at *2 (E.D.N.Y. Nov. 29, 2005). This court has reviewed the entire record submitted by the parties to determine whether there are disputed issues of material fact. See id. The court will deem admitted only those facts in Defendants' Rule 56.1 Statement that are supported by admissible evidence and are not controverted by other admissible evidence in the record.

[2] Plaintiff claims that Lieutenant Messina and Officer Occhipinti made up this story about drug dealers in order to justify their actions. (Mem. Opp. Summ. J. ¶ 14 (Docket Entry #54).) Beyond these speculative allegations which are not based on any personal knowledge, however, Plaintiff offers no evidence to controvert the officers' testimony in this regard.

2

Furthermore, the building is within the territory of the "south-side" Redfern drug faction. (Id. ¶ 23.) The two factions were involved in an ongoing dispute at the time. (Id. ¶ 22.) Shortly after seeing Colley enter rival drug territory, the officers got out of their patrol car and went into the apartment building, where they encountered Williams standing in the lobby. (Id. ¶¶ 25-26.) Lieutenant Messina asked Williams whether he lived in the building, to which Williams responded that he did not. (Id. ¶¶ 27-28.) The parties dispute what happened next.

According to Plaintiff, the officers asked him where he was going and he replied that he was going to Apartment 2-B. (Williams Dep. 61.) The officers then asked him if he had identification. (Id.) He responded that he did, reached into his back pocket, retrieved his identification, and handed it to the officers. (Id.) At that point, the officers rushed and tackled him. (Mem. Opp. Summ. J. (Docket Entry #54) ("Mem. Opp.") Ex. A-2, Dep. of Donald Williams 65 ("Williams Dep. II").) Lieutenant Messina grabbed Williams by the middle of his back and slammed him to the ground. (Id.) In the process, Messina's arm grazed Williams' nose. (Williams Dep. 70.) With Williams face down on the floor, Officer Occhipinti also jumped on him, pinning down his upper back and arm. (Williams Dep. II 66.) At no point during this altercation did Williams struggle or resist in any way. (Williams Dep. 70.)

Defendants present an alternate version of these events. According to Defendants, the officers never asked and Williams never said that he was going to visit someone in Apartment 2-B. (See Def. 56.1 ¶ 48.) Rather, when they learned that Williams did not live in the building, they asked him for identification. (Id. ¶¶ 28-29.) Williams then put at least one hand in his rear pants pocket. (Id. ¶ 30.) Lieutenant Messina asked Williams to remove his hand from his pocket, but Williams refused. (Id. ¶¶ 31-32.) Following this refusal, Lieutenant Messina repeated his order that Williams take his hand out of his pocket at least four more times. (Id. ¶¶

3

33-35.) At that point, Lieutenant Messina forcibly attempted to remove Williams's hand from his pocket. (Id. ¶ 36.) Williams resisted these efforts to remove his hand and tried to walk away from the officers. (Id. ¶¶ 37-38.) In an attempt to restrain Williams, the officers grabbed his upper body. (Id. ¶ 39.) Williams continued to struggle with the officers and ignored several direct orders to stop resisting. (Id. ¶¶ 40-42.) The officers then brought Williams to the ground. (Id. ¶ 43.) As they tried to place him in handcuffs, he tucked his arms underneath his body. (Id. ¶ 44.) The officers eventually succeeded in handcuffing Williams and escorted him to their patrol car. (Id. ¶¶ 46-47.)

Following Williams's arrest, the Queens County District Attorney's Office prosecuted him for criminal trespass, pursuant to New York Penal Law § 140.10, and resisting arrest, pursuant to New York Penal Law § 205.30. (Def 56.1 ¶ 51.) Officer Occhipinti and Lieutenant Messina were the only complaining witnesses. (See Okereke Decl. Ex. I, Supporting Crim. Ct. Aff. SPAA Virginia-Lee Grant. ("Grant Aff."); Okereke Decl. Ex. J, Aff. ADA Jasmine Chang 2, 5 ("Chang Aff.").) The charges were eventually dismissed on speedy trial grounds. (Williams Dep. 97-98.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact. See Fed. R. Civ. P. 56(c). The burden to show the absence of a genuine factual dispute falls on the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). A dispute regarding a fact is genuine if the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." Elec. Inspectors, Inc. v. Vill. of E. Hills, 320 F.3d 110, 117 (2d Cir. 2003). In evaluating a motion for

4

summary judgment, the court is required to "view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments . . . ." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted).

Summary judgment is properly granted when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). While a non-moving party must do more than show "some metaphysical doubt as to the material facts," Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 586 (1986), "all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial," McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 1996) (citation omitted)). However, the non-moving party may not rely on conclusory allegations or unsubstantiated speculation. Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). Where a party opposes a motion pro se, the court must construe his or her briefs liberally. See, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006). Ultimately, in deciding a motion for summary judgment, the court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

## III. DISCUSSION

Defendants move for summary judgment on the following claims: (1) the false arrest claim against Officer Occhipinti and Lieutenant Messina, (2) the excessive force claim against

5

Officer Occhipinti and Lieutenant Messina, (3) the malicious prosecution claim against Officer Occhipinti and Lieutenant Messina, (4) the malicious prosecution claim against DA Brown and ADA Chang, (5) all federal claims against the City, (6) all federal claims against the NYPD, and (7) all pendent state law claims. The court considers each in turn.

### A. Claims Against Officer Occhipinti and Lieutenant Messina

As a threshold matter, Defendants argue that Plaintiff's claims against Officer Occhipinti and Lieutenant Messina for false arrest and excessive force are barred by the statute of limitations. Plaintiff filed his Complaint on December 4, 2006, naming as defendants only the City and the NYPD. (See Compl. (Docket Entry #1).) The Complaint is divided into two major sections: "AS FOR A CAUSE OF ACTION," and "AS FOR A SECOND CAUSE OF ACTION." The first section deals primarily with Plaintiff's interactions with Officer Occhipinti and Lieutenant Messina, who are mentioned by name in the body of the Complaint. (See Compl. ¶¶ 6-14.) The second section makes reference to a policy and pattern of ineffective training and supervision by the City and the NYPD. (See Compl. ¶¶ 15-16.) On March 22, 2007, Plaintiff amended his Complaint to include as defendants DA Brown, ADA Chang, Officer Occhipinti, and Lieutenant Messina, but the substance remained largely the same. (See Am. Compl. (Docket Entry #4).) On March 29, 2007, Plaintiff was granted a forty-five day extension of time to serve Defendants. (See Order dated March 29, 2006.) Lieutenant Messina was served on March 28, 2007 and Officer Occhipinti was served on April 30, 2007. (Return of Service (Docket Entry #9) (Lt. Messina); Return of Service (Docket Entry #10) (Off. Occhipinti).)

Claims arising under Section 1983 must be filed within three years from the date the cause of action accrued. Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994). Such a claim "seeking damages for false arrest in violation of the Fourth Amendment, where the arrest is followed by

6

criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 397 (2007). Thus, Plaintiff's false arrest claim accrued on the day he was arrested, December 4, 2003. Likewise, Plaintiff's excessive force claim accrued on December 4, 2003, when the alleged use of excessive force occurred. See Daniel v. Safir, 175 F. Supp. 2d. 474, 480 (E.D.N.Y. 2001) ("[C]ourts have repeatedly held that claims for false arrest or excessive force accrue on the date the arrest is made or the force is used."). In order to be timely, therefore, Plaintiff's claims needed to be filed by December 4, 2006.

Plaintiff did not name Officer Occhipinti or Lieutenant Messina as a defendant until after the statute of limitations had run. However, since the original Complaint was filed on December 4, 2006, the Amended Complaint may still be timely with respect to Officer Occhipinti and Lieutenant Messina if the amendment relates back to the date that the original Complaint was filed. Relation back of amendments is governed by Rule 15(c) of the Federal Rules of Civil Procedure, which provides, in pertinent part, that the amendment relates back under the following conditions:

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

There is no dispute that Rule 15(c)(2) is satisfied since the claims asserted in the Amended Complaint arise out of the same conduct as that asserted in the original Complaint, but the parties disagree as to whether Plaintiff's failure to name the officers as defendants was a "mistake" for

7

purposes of Rule 15(c)(3)(B) and whether Officer Occhipinti received adequate notice of the action so as to avoid prejudice as required by Rule 15(c)(3)(A).

A permissible "mistake" within the context of Rule 15(c) is not limited to misnomer. Rule 15(c)(3) was "expressly intended to preserve legitimate suits despite . . . mistakes of law at the pleading stage." Soto v. Brooklyn Correctional Facility, 80 F.3d 34, 36 (2d Cir. 1996). The Second Circuit has made clear that an amended complaint adding a defendant relates back to the original complaint if the plaintiff is able to demonstrate a factual or legal mistake. See Cornwell v. Robinson, 23 F.3d 694 (2d Cir. 1994). However, a plaintiff may not choose to omit known individual defendants initially and later seek to add them by amendment. See Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 469 (2d Cir. 1995), modified, 74 F.3d 1366 (2d Cir. 1996) (citing Cornwell, 23 F.3d at 705).

In Soto, a pro se plaintiff sought to add individual corrections officers to his original Section 1983 complaint, which had asserted claims solely against the Brooklyn Correctional Facility. The plaintiff needed to name the individual officers in order to maintain the action arising from conduct that was not alleged to have been part of any institutional custom or policy. Because the pro se plaintiff did not know that he was required to name the individual defendants, the Second Circuit characterized his failure to do so as a "mistake" under Rule 15(c)(3), rather than a matter of choice. Soto, 80 F.3d at 37.

In the present case, it is reasonably clear that Plaintiff, proceeding pro se, made a similar legal mistake. The bifurcated structure of the Complaint indicates that Plaintiff intended to pursue two types of claims: claims arising from the conduct of the individual officers, and claims arising from a policy and pattern of ineffective training and supervision. In order to maintain both types of claims, Plaintiff necessarily had to name the individual officers as defendants.

Proceeding against the municipality alone, only the ineffective training and supervision claims could stand. Since Plaintiff mentioned the individual officers by name in the section of the Complaint discussing his claims against them, the court is convinced that "but for his mistake as to the technicalities of constitutional tort law, he would have named the officers in the original complaint."[3] Soto, 80 F.3d at 37. As a result, Plaintiff's failure to name Officer Occhipinti and Lieutenant Messina in the original Complaint is a cognizable "mistake" for purposes for Rule 15(c).

Besides mistake, Rule 15(c) also requires adequate notice to the new parties. Notice must be received within the time period authorized by Rule 4(m), which allows for 120 days to effect service of a timely filed summons and complaint. The Advisory Committee Notes to Rule 15 indicate that the Rule 4(m) period "allows not only the 120 days specified in that rule, but also any additional time resulting from any extension order by the court." Heiser v. Assoc. of Apt. Owners of Polo Beach Club, 848 F. Supp. 1482, 1487 (D. Haw. 1993). In this case, the court granted a forty-five day extension of time to serve process on March 29, and both Officer Occhipinti and Lieutenant Messina were served before the expiration of the time extension. Therefore, contrary to Defendants' argument, the fact that Officer Occhipinti was not served within 120 days from the date Plaintiff filed his original Complaint does not preclude relating the Amended Complaint back to the original Complaint under Rule 15(c). See Thomas v. Arevalo, No. 95 CIV. 4704 (SS), 1998 WL 427623, at *12 (S.D.N.Y. July 28, 1998) (relating back amended complaint under similar circumstances).

---

[3] Accordingly, Defendants' invocation of Barrow is unavailing. As they rightly point out, Barrow holds that "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake" under Rule 15(c). Barrow, 66 F.3d at 470 (emphasis added). As the Second Circuit has recognized, however, the District Judge in Barrow had "expressly admonished the plaintiff, before the limitations period had expired, to discover the names of the individual officers and to amend his complaint to add them as defendants." Soto, 80 F.3d at 37. Here, in contrast, there is no evidence that Plaintiff knew he needed to name the individual officers but chose not to do so. Rather, like the pro se plaintiff in Soto, Plaintiff simply made a mistake regarding the law governing his action.

Having found a cognizable mistake and proper notice to both Officer Occhipinti and Lieutenant Messina, the court finds that Plaintiff's claims against the officers relate back to the date of the original Complaint, which was timely filed under the three-year statute of limitations. Accordingly, the court next considers the parties' arguments on the merits of Plaintiff's claims against the officers.

1.  False Arrest

Plaintiff's false arrest claim under § 1983 stems from his Fourth Amendment right to remain free from unreasonable searches, including arrest without probable cause. In analyzing such a claim, the court generally applies the substantive law of the state where the arrest took place. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, the existence of probable cause is an absolute defense to a false arrest claim. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause exists when, based on the totality of the circumstances, an arresting officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007); see also Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). Determining whether probable cause exists requires an objective inquiry focusing on "the facts available to the arresting officer at the time of the arrest." Finigan v. Marshall, 574 F.3d 57, 61-62 (2d Cir. 2009).

Viewing the evidence in the light most favorable to Plaintiff, as required on a motion for summary judgment, the court is not persuaded that Defendants have established probable cause as a matter of law. Defendants suggest that Lieutenant Messina and Officer Occhipinti reasonably believed that Williams was affiliated a drug faction because they had recently

10

observed a known drug dealer entering the apartment building. (See Defs.' Mem. Supp. Mot. Summ. J. 14 (Docket Entry #53) ("Def. Mem.").) However, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Beyond this, at the point that the officers allegedly employed force, Plaintiff's evidence establishes only that Williams had told the officers he did not live in the building and that he was there to visit someone in Apartment 2-B. Given Williams's claim that he had permission to be in the building, an inference that he was trespassing was not warranted without some further investigation, even in light of the possible drug-related activity the officers believed they had observed. The officers did not ask any follow-up questions or make any further efforts to ascertain the facts. On Plaintiff's account of the facts, the officers did not have probable cause to arrest and, therefore, summary judgment in favor of Defendants is not appropriate on the claim of false arrest.

Nevertheless, Defendants argue that Officer Occhipinti and Lieutenant Messina are protected by qualified immunity. Qualified immunity protects police officers as long as their conduct does not violate clearly established statutory or constitutional rights, or as long as it was objectively reasonable for them to believe that their acts did not violate those rights. Golino v. City of New Haven, 950 F.2d 864, 870 (1991). There is no doubt that the right not to be arrested without probable cause has long been clearly established. Id. However, even absent probable cause, an arresting officer is entitled to qualified immunity from a suit for damages if there was "arguable probable cause" to arrest. See Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). "Arguable probable cause" exists where "officers of reasonable competence could disagree on whether the probable cause test was met," Golino, 950 F.2d at 870, but the Second

Circuit has explained that "arguable probable cause" must "not be misunderstood to mean 'almost' probable cause." Zellner, 494 F.3d at 370 (quoting Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007).

Even applying this more permissive test, the court is not convinced that the officers had "arguable probable cause" to arrest on Plaintiff's version of the facts. Without some further investigation, Williams's statements explaining his presence in the building and the officers' knowledge that a drug dealer was somewhere in the building would not be sufficient to lead a reasonably competent officer to believe that he was trespassing. Accordingly, summary judgment is denied as to Plaintiff's false arrest claim.

2. Excessive Force

Every claim "that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). Under this standard, the determinative question is whether the officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 396. In this context, reasonableness must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).

The court cannot find as a matter of law that the force used by Officer Occhipinti and Lieutenant Messina was reasonable. The parties' accounts of the circumstances surrounding the use of force differ on many points, some of which raise genuine issues of material fact precluding summary judgment. For instance, there is a question regarding what warnings, if any, the officers gave Williams before using force, and whether Williams struggled with the officers.

12

For the purpose of resolving this summary judgment motion, the court must view the facts in the light most favorable to Williams, the non-moving party. In his deposition, Williams testified that (1) the officers entered the building and asked him if he lived there, (2) he told them he did not, (3) they asked him what he was doing in the building, (4) he told them he was going to visit someone in Apartment 2-B, (5) they asked him for identification, (6) he reached into his back pocket, took out his identification and handed it to them, (7) they then rushed and tackled him, and (8) at no time did he struggle or resist. Taking Williams's account of the story as true, even in light of the context of potential drug-related activity that led the officers to enter the building, the court finds that the officers' conduct was not objectively reasonable. When a person provides innocent answers to officers' questions and complies with all their requests, there is simply no reasonable basis for the officers to slam that person to the ground.

Here again, Defendants argue that Officer Occhipinti and Lieutenant Messina are entitled to qualified immunity. Qualified immunity shields governmental officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights[4] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 614 (1999). However, when the "circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled" to summary judgment on the grounds of qualified immunity. Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002). Summary judgment is precluded in such a case because it is not possible to "determine whether the officers reasonably believed that their force was not

---

[4] No one argues that the right to be free from the use of excessive force in effectuating an arrest was not "clearly established" at the time of Williams's arrest. See, e.g., Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002) (pointing out that it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited").

13

excessive when several material facts are still in dispute." Curry v. City of Syracuse, 316 F.3d 324, 334 (2d Cir. 2003) (quoting Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999)).

As previously discussed, there are a number of issues of material fact that are crucial to determining whether the officers were "operating under a reasonable belief as to what level of force [they were] permitted to employ." Brooks v. Siegler, 531 F. Supp. 2d 323, 332 (D. Conn. 2008); see also Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) ("[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon.] Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment."). As such, the court denies Defendants' request for summary judgment as to Plaintiff's excessive force claim.

3.  Malicious Prosecution

A claim for malicious prosecution under § 1983 is governed by state law. See Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). To establish malicious prosecution under New York law, a plaintiff must show "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999). Only the first three elements are in dispute in this case.

When the defendant is a layperson, merely reporting a crime and serving as a witness does not rise to the level of initiating a prosecution. Rohman v. New York City Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000). When the defendant is a police officer, however, a different standard necessarily applies. See Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372,

14

383 (S.D.N.Y. 2005) (noting that "applying the layperson standard to the police would mean that law enforcement officers would never be liable for malicious prosecution"). In such cases, "plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006).

Regarding the first element, Defendants argue that the Queens County District Attorney's Office made an independent determination to prosecute Williams. (Def. Mem. 8.) In general, courts presume that the prosecutor exercises independent judgment in deciding whether to initiate or continue a criminal proceeding. See Brome v. City of New York, No. 02 CIV. 7184 (WHP), 2004 WL 502645, at *5-6 (S.D.N.Y. Mar 15, 2004). Even so, an arresting officer can be held liable for malicious prosecution if he "creates false information likely to influence a jury's decision and forwards that information to prosecutors," or if he "withholds relevant and material information." Mitchell, 434 F. Supp. 2d at 227.

In this case, while the District Attorney's Office may have made an independent determination as to whether to prosecute, that determination was based on nothing more than the testimony of the arresting officers, who were the only complaining witnesses. (See Grant Aff.; Chang Aff. 2, 5.) On Plaintiff's account of the facts, which the court accepts as true on summary judgment, the officers provided false information about the events leading up to his arrest, which then formed the basis for the criminal complaint against him. Defendants dispute this account, creating genuine issues of material fact regarding such matters as whether Williams had a legitimate purpose for his presence in the apartment building and whether Williams had struggled with the officers or resisted arrest. Therefore, there is a triable issue of fact as to whether Officer Occhipinti and Lieutenant Messina initiated Williams's prosecution on the basis

15

of false information. See Williams v. City of New York, No. 05 CIV. 10230 (SAS), 2007 WL 2214390, at *11 (S.D.N.Y. July 26, 2007); Webster v. City of New York, 333 F. Supp. 2d 184, 198-99 (S.D.N.Y. 2004).

Regarding the second element, the court has already identified disputed issues of material fact as to whether the officers had probable cause to arrest, as discussed above. That finding also bears on the third element because, in general, lack of probable cause "raises an inference of malice sufficient to withstand summary judgment." Ricciuti v. New York City Transit Auth., 124 F.3d 123, 131 (2d Cir. 1997); see also Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003).

Defendants' argument that the officers are entitled to qualified immunity suffers from the same problem. Given the disputed factual issues on these three elements of the malicious prosecution claim, the court cannot say as a matter of law that it was "objectively reasonable for [the officers] to believe their acts did not violate" Plantiff's right to be free from malicious prosecution. Zellner, 494 F.3d at 367. No reasonable officer would believe himself free to arrest without probable cause or provide false information to the prosecutor, as Plantiff's version of the facts would have it. Accordingly, Officer Occhipinti and Lieutenant Messina are not entitled to qualified immunity and the court denies Defendants' motion for summary judgment as to the malicious prosecution claim against the officers.

**B.     Malicious Prosecution Claim Against DA Brown and ADA Chang**

Defendants argue that the malicious prosecution claim against DA Brown and ADA Chang must be dismissed under a theory of absolute prosecutorial immunity. (Def. Mem. 15.) This well-established immunity applies to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an

16

advocate for the State." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). It clearly encompasses claims for damages arising from a decision to initiate and continue a criminal prosecution, a quintessential prosecutorial function. See Imbler v. Pachtman, 424 U.S. 409, 430 (1976); Shmueli v. Ctiy of New York, 424 F.3d 231, 237 (2d Cir. 2005). Absolute immunity also applies to acts of evaluating evidence and interviewing witnesses in preparation for a prosecution. See Buckley, 509 U.S. at 273.

Plaintiff has not put forth any evidence to suggest that DA Brown or ADA Chang acted outside of their roles as prosecutors. Nor does he make any argument as to why they shouldn't be entitled to absolute immunity. Construing the pro se Complaint liberally suggests an argument that the prosecutors should not have found probable cause without determining whether Williams had permission to be in the apartment building. (See Compl. ¶ 18.) But evaluating evidence and deciding whether to initiate a prosecution are exactly the sort of actions for which absolute immunity shields prosecutors from liability. The court finds that DA Brown and ADA Chang are entitled to absolute immunity and grants summary judgment to Defendants on the claim of malicious prosecution asserted against these prosecutors.

### C. Claims Against the City

A municipality cannot be held liable for the actions of its employees solely on the basis of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, a plaintiff must show that his constitutional rights were violated as a result of a municipal policy or custom. See id. at 690-91. In this case, Plaintiff alleges that the City "has projected a policy and a pattern of not effectively training or supervising its officers," resulting in the violation of constitutional rights. Municipal liability for failure to train requires a showing that the "officials' purported failure to train occurred under circumstances that could constitute deliberate

indifference," as well as identification of a specific deficiency in the municipality's training program which is "closely related to the ultimate injury," such that it actually caused the constitutional deprivation. Amnesty America v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 391 (1989)). Likewise, municipal liability for failure to supervise requires that the municipality's failure to act amounts to deliberate indifference. See Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

While Plaintiff alleges ineffective training in his Complaint, he has failed to adduce any evidence to support this claim. He presents no evidence concerning training at all, much less evidence that shows a specific deficiency in the City's training program or establishes reckless indifference on the City's part. Such conclusory and speculative allegations are insufficient to survive summary judgment.

The only evidence Plaintiff offers to support his claim of failure to supervise is an officer history report for Lieutenant Messina. (See Mem. Opp. Ex. C, Messina Officer History.) The report lists complaints filed with the Civilian Complaint Review Board ("the Review Board"), as well as the Review Board's disposition of each. The report discloses ten complaints filed against Lieutenant Messina (including the one filed by Williams himself), most of which consist of several specific allegations of misconduct. Out of all those allegations in the report, only one indicates a disposition of "Substantiated (Charges) Filed." The rest were all found to be without merit. Plaintiff argues that even though all of these charges were "disposed of in one way or another, I have testified at my deposition that this 'review board' is biased" because the Review Board works for the City. (Mem. Opp. ¶ 44.) He contends that the City displays deliberate indifference by continuing to employ Lieutenant Messina despite the complaints filed against him.

Absent actual evidence of bias or other misconduct on the part of the Review Board, however, the City's failure to take action against Lieutenant Messina on the basis of complaints found to be meritless does not constitute deliberate indifference. Plaintiff has offered no such evidence, other than his own deposition testimony asserting that the Review Board is a biased forum. On a motion for summary judgment, such conclusory assertions unsupported by admissible evidence are insufficient. The court finds that Plaintiff has failed to establish municipal liability and his claims against the City fail as a matter of law.

### D.     Claims Against the NYPD

Defendants argue that all claims against the NYPD should be dismissed because the NYPD is not a suable entity. (Def. Mem. 22.) Rule 17(b) of the Federal Rules of Civil Procedure provides that state law determines whether a municipal entity may be sued. Brodeur v. City of New York, No. 96 CIV. 9421 (RPP), 1998 WL 557599, at *8 (S.D.N.Y. Sept. 2, 1998). Under the New York City Charter, "[a]ll actions and proceedings for the recovery of penalties for the violation of any laws shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396. Thus, it is well established that the NYPD is not amenable to suit. See, e.g., Mendez v. City of New York Human Resources Admin., No. 04 CIV. 0559 (RWS), 2005 WL 2739276, at *3 (S.D.N.Y. Oct. 24, 2005); Brodeur, 1998 WL 557599, at *8. Consequently, the court grants summary judgment to Defendants on all claims against the NYPD.

### E.     Pendant State Law Claims

Defendants contend that all of Plaintiff's state law claims must be dismissed for failure to file a timely notice of claim. (Def. Mem. 23.) Under New York law, a notice of claim, pursuant to NY Gen. Mun. L. § 50-e(1)(b), is a statutory precondition to suit against a municipality or any

of its officers, agents or employees. See Barchet v. New York City Transit Authority, 20 N.Y.2d 1, 6 (1967). The notice of claim must be filed within ninety days of the accrual of the cause of action. NY Gen. Mun. L. § 50-e. Both state and federal courts have strictly construed this provision. See Phillips v. Village of Frankfort, 220 N.Y.S.2d 171, 172-73 (Sup. Ct. 1961); Shakur v. McGrath, 517 F.2d 983, 985 (2d Cir. 1975). Failure to fail a timely notice of claim "requires dismissal of pendent state tort claims against the City or its employees in a federal civil rights action." Robinson v. Matos, No. 97 CIV. 7144 (TPG), 1999 WL 225938, at *2 (S.D.N.Y. Apr. 19, 1999) (citing Felder v. Casey, 487 U.S. 131, 151 (1988)). In the present case, Plaintiff never filed a notice of claim (Def. 56.1 ¶ 54), and the time allowed for doing so expired long ago. Because Plaintiff's claims arising under state law are time-barred, the court grants Defendant's Motion for Summary Judgment as to all state law claims.

## IV. CONCLUSION

As set forth above, Defendants' Motion for Summary Judgment is DENIED as to (1) the false arrest claim against Officer Occhipinti and Lieutenant Messina, (2) the excessive force claim against Officer Occhipinti and Lieutenant Messina, and (3) the malicious prosecution claim against Officer Occhipinti and Lieutenant Messina, but GRANTED as to (1) the malicious prosecution claim against DA Brown and ADA Chang, (2) all federal claims against the City, (3) all federal claims against the NYPD, and (4) all pendent state law claims.

SO ORDERED.

Dated: Brooklyn, New York
October 6, 2009

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge